[No. 8,118.—Department Two.]
March 1, 1882.

## JAMES F. CUNNINGHAM v. J. W. SHANKLIN.

STATE LANDS — CONTEST — JURISDICTION — SURVEYOR GENERAL—APPLICATION TO PURCHASE UNDER AMENDATORY ACT OF APRIL —, 1870— JUDGMENT.—After judgment has been entered in an action upon a reference of a contest by the Surveyor General to determine the right of contestants to purchase State lands, it is the duty of the Surveyor-General to obey the judgment, and mandamus will lie to compel him. So held in a case where the jurisdiction of the District Court was called in question, on the ground that the amendatory Act of April, 1870—under which the plaintiff's application was made—was void.

ID.—ID.—ID.—ID.—ESTOPPEL.—In such case the State and its officers are estopped from selling the same land to an applicant who filed his claim pending the action or subsequent thereto; and the reception and filing of such an application does not create such a contest as to authorize a reference to the Court under Section 3314, Political Code.

Application for writ of mandamus.

*J. H. McKune,* for Plaintiff.

An application to purchase land of the Government (State or National), subject to sale made in form by one competent to purchase, gives such applicant a substantial right, and such right as to lands subject to sale by the State, is by statute made the subject of a civil action between contesting claimants. (Pol. C., § 3414.)

The State by its statutes has provided the reference to the Court as the only means to determine the right to purchase, and the judgment of the Court in favor of Cunningham bound the State with its officers and all others. (*Laugenour* v. *Shanklin,* 57 Cal. 70.)

The statute contemplates that where the matter is so referred to the Courts, the further application shall not be received by the Surveyor General, and that where the sentence of Court on the question has been pronounced, the Surveyor General shall act in accordance therewith.

When the sovereign power confides to a tribunal a right to sell lands, and to determine between purchasers who has the better right, this power is exclusive and its determinations conclusive, not only on the parties claiming the right to purchase, but on the seller. (*Marquez* v. *Frisbie,* 41 Cal. 624; *Burrell* v. *Haw,* 48 id. 222; *Wilkinson* v. *Merrill,* 52 id. 426; *Laugenour* v. *Shanklin, supra; United States* v. *Throckmorton,* 98 U. S. 61; *Moll* v. *Merrill,* Jan. 24, 1881; *Wilkinson* v. *Merrill,* Jan. 24, 1881.)

*Garber, Thornton & Bishop,* for Defendant.

The District Court had not jurisdiction of the action of *Cunningham* v. *Crowley,* and its judgment and all other proceedings therein were void.

1. At the time of the filing of Cunningham's application, there was no law in force authorizing any application for, or authorizing the purchase or sale of the land in controversy. The application was filed on the thirty-first day of December, 1872, and was made under the provisions of Section 53 of the Act of 1868, as amended. The amendment to that section, in force on December 31, 1872, was the amendment made by

Section 4 of the amendatory Act of April, 1870. The first portion of this section provides, in a perfectly intelligible and intelligent manner, for the subjects to which it relates. It is only the last clause, or that referring to the purchase of land other than the sixteenth and thirty-sixth sections, which is imperfect. But that clause, which was the only provision then in existence referring to or purporting to deal with the purchase or sale of these lands, is so utterly unintelligible that no action of any kind could be inaugurated under it, and no right acquired or founded upon its provisions. It failed to express any rational intent; it was incapable of interpretation, and incapable of execution. (*Copp* v. *Harrington*, 47 Cal. 240.)

But notwithstanding that the latter clause of the section was nonsense, nevertheless the section, as found in the amendatory Act, operated as a repeal of and a substitute for the corresponding section of the Act of 1868. Only a portion, not the whole, of the amendatory or substituted section was nonsense; but, whether nonsense or not, it was, by the express declaration of the Legislature, substituted for the original section. Both by the express language of the amendatory act and by operation of law, the original section, as a whole, was abrogated, and the new one, as a whole, substituted. The original section was effectually repealed and obliterated from the statute book. (*Goodno* v. *City of Oshkosh*, 31 Wis. 127.)

There being no law authorizing application for or the purchase or sale of such lands, the filing of Cunningham's application was a nullity and wholly ineffectual to give him any rights in the premises or to create any contest.

No contest having arisen in the office of the Register or Surveyor General, the District Court had no jurisdiction of the action of Cunningham against Crowley, and this want of jurisdiction appears upon the face of the complaint therein.

It is the existence of the contest and not the making of an order of reference that gives jurisdiction. If there be really no contest in the sense of the law, the making of an order of reference by the Surveyor General or Register does not give jurisdiction to the Court. The power to make such order is limited by the terms of the Act to "cases where a contest shall arise concerning the approval of a survey or location

before the Surveyor General, or concerning a certificate of purchase, or other evidence of title before the Register." (*Keema* v. *Doherty*, 51 Cal. 3; *Allen* v. *Dake*, 50 id. 80; *Vance* v. *Edwards*, 52 id. 93 ; *Berry* v. *Cammet*, 44 id. 351; *Thompson* v. *Ingham*, 14 Q. B. 710; *Chew* v. *Holroyd*, 8 Exch. 24; *Perkins* v. *Proctor*, 2 Wils. 382; *Terry* v. *Huntington*, Hard. 480; *Mulligan* v. *Smith*, 59 Cal. 206.)  " The presumption in favor of the jurisdiction of Superior Courts necessarily ceases when the proceedings themselves negative the existence of jurisdiction." (1 Smith's L. C. 1029 ; Freeman on Judgments, § 125; *Gray* v. *Larrimore*, 2 Abb. (U. S.) 548 ; *Roger* v. *Shannon*, 52 Cal. 99.)

Assuming, however, that the District Court did have jurisdiction of the action of *Cunningham* v. *Crowley*, its judgment therein only established that, as against Crowley, Cunningham had the better right to purchase. It does not preclude the State, or any subsequent applicant prior to the issuance of the patent, from questioning in the Land Department the right of Cunningham to obtain the title.

The rule should not be readily adopted according to which a judgment in an action between two persons binds and concludes those who are not parties to it, and who have no opportunity and no right to be heard in the action in which it is rendered.  If such a rule should be adopted in respect to these actions to determine contests, it would only be necessary, in order to estop and bind the State, and prevent every other person from making application to purchase, for an applicant to procure some confederate to make a second application, create a contest; have it referred to the Courts; admit the validity of the other party's application and proceeding, except as to some matters in respect to which an untenable objection would be raised only to be overruled, and without the real objection or the merits having been presented, a judgment would be rendered which would be binding upon the whole world.

The State has no right to be heard in these actions; a subsequent applicant has no right to intervene; the contestants are the only proper parties to the suit (*Cunningham* v. *Crowley*, 51 Cal. 132), and the contest must be referred to the Court where these two parties only can be heard, but

where the rights and claims of the State, and of all other persons, are to be foreclosed, upon the demand of either. Is it not apparent that there is here afforded the widest opportunity for the perpetration of frauds through collusion between the apparent contestants? To this action none but these contestants are parties; over it they have exclusive control; the issues to be determined in it, and the questions to be presented, are not framed or even suggested by the officer of the State, but are left entirely to the parties, and there is given to the Court simply jurisdiction to determine which of the two adverse claimants has the preference. The language of the statute is, that "either party may bring an action in the District Court * * * to determine such conflict, and the proffer of a certified copy of the entry * * * * * shall give said District Court full and complete jurisdiction to hear and determine said conflict." Not to determine or ascertain any independent right as against the owner of the land, or to determine absolutely, or as an independent proposition, that one party has the right, but simply to determine the issue created by and existing between the two contestants, namely, which, as against the other, is entitled to purchase; or, in other words, which one is entitled to a preference over the other. (*Cunningham* v. *Crowley, supra.*)

The only effect attributable to the judgment in a contest is that given by the express words of the statute, viz.: That the Surveyor General, or Register, "shall give his approval of the survey or location, or issue the certificate of purchase or other evidence of title, in accordance with said final judgment."

In the case at bar, this was done; but the approval of the survey or location, and the issuance of the certificate of purchase in accordance with the judgment, can have no greater force, efficiency, or conclusiveness, than such approval and issuance by the officers of the Land Department, where no contest has arisen and no judgment has been rendered. In that case, as we have seen, no question exists as to the right of the land officers to receive applications from other parties, and upon protest and demand to refer the case to the Courts for determination as a contest.

It is said that the question presented in this case was deter-

mined in *Laugenour* v. *Shanklin.* This is incorrect. There was no question there as to the jurisdiction of the District Court in the contest. But aside from that, the application in *Laugenour* v. *Shanklin* was for a mandate to compel the Surveyor General to approve the petitioner's application to purchase in accordance with and in obedience to the judgment rendered in his favor in the contest. The Court awarded the writ, because the language of the statute was peremptory, and prescribed in unmistakable terms the duty of the Surveyor General in such cases, which was to approve the application.

But in this case, that duty has been performed, and the question is a very different one, viz., the effect of that approval upon the rights of a subsequent applicant, who claims to be entitled to purchase and upon whose demand the contest with Cunningham, which he alleges is created by his application, is referred by the Surveyor General to the Superior Court.

MORRISON, C. J. :

This case is brought before us on an agreed statement of facts, from which it appears that contests having arisen in the office of the Surveyor General, between the plaintiff and other parties, respecting their rights to purchase certain lands belonging to the State, the same were referred to the District Court of the Twentieth Judicial District for determination, under Sections 3414, 3415, and 3416 of the Political Code. In pursuance of the order of reference, the plaintiff commenced actions in said District Court for the purpose of having such conflicting claims determined, and such proceedings were had in them, that, on the first day of August, 1874, the Court entered its judgment in one of the cases, whereby it was "ordered, adjudged, and decreed, that the said James F. Cunningham is entitled to purchase said land, and to have his application, described in his complaint for the purchase of said land, approved. * * * That his location thereof be approved," and directing the Surveyor General of said State, "upon the filing in his office of a copy of said decree, duly certified, to approve the said application and location of said Cunningham, and to issue to him a certificate

thereof," etc.   On the fifteenth day of February, 1875, judgments were entered in the other cases to the same effect.   On the fourteenth day of August, 1878, one J. S. Manley filed an application for the same land, and on the twenty-sixth day of August, 1881, he made a demand that the contest between Cunningham and himself be referred to the proper Court for trial.   On the thirty-first day of August, 1881, the Surveyor General and *ex officio* Register of the State Land Office made an order referring said contest to the Superior Court of Santa Cruz county for trial.   These are the substantial and material facts presented by the agreed statement, and the following are the questions which are submitted to us for decision:

1. Whether the case of *Cunningham* v. *Crowley*, above mentioned, is a proceeding *in rem* or in the nature of a proceeding *in rem*, giving the said Cunningham a right to purchase said land absolutely ?

2. Are the State and the officers thereof estopped from selling the same land to an applicant who filed his claim pending the said action or subsequent thereto ?

3. Was the Surveyor General authorized by law to receive the application of said Manley *et al.*, and did the reception and filing of said application create such a contest in the office of the Surveyor General or Register of the State Land Office, as would authorize said officers to refer the parties to Court to litigate their respective claims, before Cunningham would be entitled to his patent under Section 1519 of the Political Code ?

4. Is the judgment in *Cunningham* v. *Crowley* an estoppel against proceedings to sell to Manley ?

5. Finally, is Cunningham entitled to his writ of mandate against said Shanklin to compel him to take the necessary steps to issue to him a patent, notwithstanding the Surveyor General has certified that a contest exists between Cunningham and Manley, and has referred the same to Court ?

By Section 3416 of the Political Code it is provided that "upon filing with the Surveyor General or Register, as the case may be, a copy of the judgment of the Court, that officer must approve the survey or location, or issue the certificate of purchase or other evidence of title in accordance with such judgment."

Was the action a proceeding *in rem ?   In rem* is a technical term used to designate proceedings or actions instituted *against the thing*, in contradistinction to personal actions, which are said to be *in personam*.  Proceedings *in rem* include not only those instituted to obtain decrees or judgments against property, as forfeited in the Admiralty or the English Exchequer, or as prize, but also suits against property to enforce a lien or privilege in the Admiralty Courts, and suits to obtain the sentence, judgment, or decree of other Courts upon the personal *status* or relations of the party, such as marriage, divorce, bastardy, settlement, or the like." (1 Bouvier's Law Dict. 693.)  Decisions in such cases are "binding and conclusive, not only upon the parties actually litigating in the cases, but upon all others.   *   *   *   Every one who can possibly be affected by the decision has a right to appear and assert his own rights, by becoming an actual party to the proceedings," etc.   (1 Greenl. Ev., § 525.)   We are not prepared to say that the proceeding under the statute in question is a proceeding *in rem*, although it may bear some resemblance to such a proceeding.

But are the officers of the State estopped thereby from selling the same land to an applicant who filed his claim pending the action brought to determine the contest, or subsequent thereto?  This question must be answered in the affirmative, as it was by the Court sitting in bank in the case of *Laugenour* v. *Shanklin*, 57 Cal. 70.   Mr. Justice Ross, delivering the opinion of the Court, says: "There would be no end to cases of this character if, after judgment had been entered in an action to determine the right of contestants to purchase, new parties can come in to prevent the enforcement of such judgment.   Section 387 of the Code of Civil Procedure does not authorize an intervention under such circumstances.   It having been determined by the Court in the action of *Wright* v. *Laugenour*, 55 Cal. 280, that the application of the petitioner for the purchase of the land in dispute was good and valid, and that the application of Wright therefor was invalid, it becomes the duty of the respondent, by virtue of Section 3416 of the Political Code, to approve petitioner's application."

The facts of that case are similar to those presented in the

case now under consideration, and the principles announced therein are decisive of the present case.

The Surveyor General was not, therefore, authorized to receive the application of Manley, and thereupon to direct a second reference for a second trial. It was his duty to obey the directions of the Court, contained in the judgment upon the first contest, and therefore the plaintiff is entitled to a writ of mandamus.

Let the writ issue as prayed for.

SHARPSTEIN and THORNTON, JJ., concurred.